**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED MARCH 8, 2005**

GERLING KONZERN ALLGEMEINE
VERSICHERUNGS AG, subrogee of
REGENTS OF THE UNIVERSITY OF
MICHIGAN,

    Plaintiff-Appellant,

v

                                    No. 122938

CECIL R. LAWSON and AMERICAN
BEAUTY TURF NURSERIES, INC.,
jointly and severally,

    Defendants-Appellees.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

This case requires that we consider whether a plaintiff, who has settled an underlying tort claim with an injured party, may subsequently proceed on a contribution action against a defendant whom the plaintiff alleges was a joint tortfeasor whose negligence constituted a proximate cause of the underlying plaintiff's injuries. Defendants argue that tort reform legislation in 1995, specifically MCL 600.2956, MCL 600.2957, and MCL 600.6304, has abrogated

plaintiff's contribution action because, had the underlying tort action proceeded to trial, the jury or judge would have been required to allocate fault among all tortfeasors and each tortfeasor, including plaintiff, would have been required to pay only for its percentage of fault. Further, defendants maintain that, if plaintiff paid more in the settlement than was warranted by its percentage of fault, it did so as a volunteer and therefore cannot seek contribution from joint tortfeasors.

These arguments are unavailing for the simple reason that the 1995 tort reform legislation preserved the right of a *severally* liable tortfeasor such as plaintiff to bring an action for contribution. Therefore, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

I. FACTS AND PROCEDURAL HISTORY

This case arose from a three-vehicle accident that occurred in 1997. In one vehicle were Ricki Ash and James Nicastri, the injured parties in the underlying claim; in the second vehicle, owned by the Regents of the University of Michigan (Regents), was employee Barry Maus; and in the third vehicle, owned by American Beauty Turf Nurseries, Inc. (American Beauty), was employee Cecil Lawson. Ash and

2

Nicastri filed suit in the Court of Claims against Maus and the Regents. Gerling Konzern Allgemeine Versicherungs AG (Gerling Konzern), the insurer and subrogee of the Regents, settled with Ash and Nicastri on behalf of Maus and the Regents, and the underlying tort action was accordingly dismissed with prejudice.

In November 1999, plaintiff in this action, Gerling Konzern, filed a contribution action against defendants Lawson and American Beauty pursuant to MCL 600.2925a-600.2925d. Defendants moved for summary disposition pursuant to MCR 2.116(C)(8), arguing that the tort reform acts of 1995, 1995 PA 161 and 1995 PA 249, by eliminating joint and several liability in certain tort actions, including the underlying action in this case, abrogated plaintiff's contribution cause of action. The trial court denied defendants' motion for summary disposition. On appeal, the Court of Appeals reversed the order of the trial court and remanded for entry of judgment in favor of defendants, holding that plaintiff's contribution action was barred as a result of the elimination of joint and several liability and the rule that, in tort actions in which liability is several only, each tortfeasor is required to pay only for his percentage of fault. 254 Mich App 241; 657 NW2d 143 (2002). We granted plaintiff's

application for leave to appeal, 469 Mich 947 (2003), and subsequently ordered that the case be reargued and resubmitted. 471 Mich 855 (2004).

## II. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(8). *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint, and may be granted only where the claims alleged are "'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.'" *Maiden, supra* at 119 (citation omitted). We also review questions of statutory interpretation de novo. *Oade v Jackson Nat'l Life Ins Co,* 465 Mich 244, 250; 632 NW2d 126 (2001).

## III. ANALYSIS

Until the enactment of tort reform legislation in 1995, concurrent tortfeasors in Michigan were "jointly and severally" liable. This meant that where multiple tortfeasors caused a single or indivisible injury, the injured party could either sue all tortfeasors jointly or he could sue any individual tortfeasor severally, and each individual tortfeasor was liable for the entire judgment, although the injured party was entitled to full

compensation only once. See *Markley v Oak Health Care Investors of Coldwater, Inc*, 255 Mich App 245, 251; 660 NW2d 344 (2003); *Maddux v Donaldson*, 362 Mich 425, 433; 108 NW2d 33 (1961). "At common law, contribution was not, as a general rule, recoverable among or between joint wrongdoers or tortfeasors." *O'Dowd v Gen Motors Corp*, 419 Mich 597, 603; 358 NW2d 553 (1984). The right of contribution, although now codified in a majority of states, evolved in equity. See 4 Restatement Torts, 2d, § 886A, comment c.[1] Thus, even though, at law, a "joint and several" tortfeasor was liable for an entire judgment, equity came to allow that tortfeasor to seek contribution from other tortfeasors. A primary purpose underlying "contribution" was to mitigate the unfairness resulting to a jointly and severally liable tortfeasor who had been required to pay an entire judgment in cases in which other tortfeasors also contributed to an injury.

However, as part of the 1995 tort reform legislation, the Legislature enacted MCL 600.2956, which provides in part, "Except as provided in section 6304, in an action based on tort or another legal theory seeking damages for

---

[1] This remains apparent in Michigan's relevant statutory provisions. For example, MCL 600.2925b(c) provides, "[p]rinciples of equity applicable to contribution generally shall apply."

5

personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint." MCL 600.2957(1) further provides, "In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault." Finally, MCL 600.6304 provides:

> (1) In an action based on tort . . . seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court . . . shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:
> * * *
> (b) The percentage of the total fault of all persons that contributed to the death or injury . . . .
> * * *
> (4) Liability in an action to which this section applies is several only and not joint. Except as otherwise provided in subsection (6), a person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsection (1).

Thus, the 1995 legislation eliminated joint and several liability in certain tort actions, requires that the fact-finder in such actions allocate fault among all responsible tortfeasors, and provides that each tortfeasor need not pay damages in an amount greater than his

6

allocated percentage of fault. As such, in an action in which an injured party has sued only one of multiple tortfeasors and in which §§ 2956, 2957, and 6304 apply, the tortfeasor would have no need to seek contribution from other tortfeasors, either in that same action (by bringing in third-party defendants) or in a separate action, because no "person shall . . . be required to pay damages in an amount greater than his or her percentage of [allocated] fault . . . ." Section 6304(4). Thus, the dissent is correct in observing that the "1995 tort reform legislation has . . . rendered unnecessary most claims for contribution in personal injury accidents." *Post* at 8.

Yet, although the 1995 tort reform legislation may have "rendered unnecessary" most contribution claims, this does not mean that it precludes every type of contribution claim, in particular that at issue in the instant case. Even before the 1995 legislation, a tortfeasor had a statutory right to seek contribution in the event that he settled a claim, see MCL 600.2925a(3), and this is the type of contribution at issue here. Contribution actions have not always solely been directed toward recovering monies that a "jointly and severally" liable tortfeasor was required to pay as the result of a verdict for which the tortfeasor was fully, although not solely, responsible.

7

Rather, such actions have also been directed toward obtaining contribution from other responsible tortfeasors following a settlement.  We find no basis in §§ 2956, 2957, or 6304 to conclude that a right to seek contribution in these circumstances has been precluded in cases in which liability among multiple tortfeasors is now "several" only rather than "joint and several."

MCL 600.2925a provides, in part:

(1) Except as otherwise provided in this act, when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

(2) The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share. A tort-feasor against whom contribution is sought shall not be compelled to make contribution beyond his own pro rata share of the entire liability.

(3) A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor if any of the following circumstances exist:

(a) The liability of the contributee for the injury or wrongful death is not extinguished by the settlement.

(b) A reasonable effort was not made to notify the contributee of the pendency of the settlement negotiations.

(c) The contributee was not given a

8

reasonable opportunity to participate in the settlement negotiations.

(d) The settlement was not made in good faith.

These provisions lead to the conclusion that plaintiff is entitled to seek contribution from defendants, and the tort reform legislation, in our judgment, does not alter this conclusion. The dissent's overreaching analysis notwithstanding, this case is actually one of straightforward statutory interpretation. As a result of the underlying accident in this case, "2 or more persons bec[a]me . . . severally liable in tort for the same injury . . . ." Section 2925a(1). Thus, "there is a right of contribution among them even though," as in this case, "judgment has not been recovered against all or any of them."[2] *Id.* Plaintiff's right to seek contribution exists because plaintiff allegedly has, "paid more than his pro rata share of the common liability . . . ."[3] Section

---

[2] Judgment has not been recovered against any tortfeasor in this case because the injured parties instead settled with plaintiff.

[3] Section 2925b(a) provides that, for purposes of contribution, "in determining the pro rata shares of tortfeasors in the entire liability as between themselves only . . . [t]heir relative degrees of fault shall be considered." Thus, in determining whether a severally liable tortfeasor has paid more than his "pro rata" share of the common liability such that he may be entitled to contribution under § 2925a, § 2925b requires considering

9

2925a(2).  Plaintiff's "total recovery [in the contribution action] is limited to the amount paid by him in excess of his pro rata share."  *Id.*

Moreover, § 2925a(3) provides statutory support for plaintiff's contribution claim resulting from its settlement.  Plaintiff, is a "tort-feasor who enter[ed] into a settlement with [the injured parties]" and, therefore, "is . . . entitled to recover contribution from another tort-feasor" unless one of the circumstances enumerated in § 2925a(3)(a)-(d) exists, which is not alleged here to be the case.  Section 2925a(3).[4]

---

each tortfeasor's relative degree of fault, just as § 6304 requires the fact-finder to consider the relative degree of fault of each tortfeasor in any action subject to several liability under that provision.

[4] Moreover, MCL 600.2925c(4) provides:

> If there is *not a judgment* for the injury or wrongful death *against the tort-feasor seeking contribution,* his right to contribution is barred *unless* he has discharged by payment the common liability within the statute of limitations period applicable to claimant's right of action against him and has commenced his action for contribution within 1 year after payment, or unless he has agreed while action is pending against him to discharge the common liability and has, within 1 year after the agreement, paid the liability and commenced his action for contribution. [Emphasis added.]

This provision contemplates situations such as the instant one, in which a tortfeasor is seeking contribution even though there has been no judgment against it because

10

The dissent's argument appears to rest on three grounds.  First, it observes, correctly, that under § 2925a(2), a plaintiff may seek contribution only if he has paid more than his share of the "common liability." Therefore, unless a severally liable tortfeasor shares a "common liability" with other tortfeasors, he has no right to contribution.  The dissent then concludes that, because the 1995 tort reform legislation made tort liability in relevant actions "several" only and not "joint and several," there is no "common liability" among the tortfeasors and, thus, no right to contribution under § 2925a(2).  *Post* at 10-11.  Essentially, the dissent equates "common liability" and "joint liability" and concludes that common liability does not exist where liability is several only.

The dissent's position is flawed.  Its construction of "common liability" as used in § 2925a(2) is inconsistent with the Legislature's express statutory directive in §

_____

the tortfeasor has settled with the injured parties.  As long as the tortfeasor complies with the requirements of this provision, it may proceed on its contribution claim pursuant to sections 2925a(3)(a)-(d).  Contrary to the dissent's suggestion, post at 12, a tortfeasor's legal liability is not "governed by the gamesmanship and legal strategies of his fellow tortfeasors."  Rather, such liability is governed by the language of § 2925a.

2925a(1) that contribution may be obtainable where liability is joint *or* several. The dissent's interpretation of "common liability" essentially reads the "joint[] *or* several[]" language out of the statute.[5]

Moreover, in *O'Dowd,* this Court specifically addressed whether a tortfeasor who was "severally" liable was entitled to seek contribution under § 2925a. We held that a right to contribution existed because § 2925a specifically refers to liability that is "joint[] *or* several[]":

> [A]ll that is necessary to enforce contribution [under § 2925a] is that the tortfeasors commonly share a burden of tort liability or, as it is sometimes put, there is a common burden of liability in tort. . . . If the defendants are jointly or severally liable in tort for "the same injury to a person" or for "the same injury to . . . property" or for "the same wrongful death", contribution pursuant to [§ 2925a] is obtainable. [*O'Dowd, supra* at 604-606.][6]

---

[5] In discerning legislative intent, a court must "give effect to every word, phrase, and clause in a statute . . . ." *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

[6] *O'Dowd* further asserted:

> The Legislature partially abrogated the common-law bar [to contribution] by adopting the 1939 Uniform Contribution Among Tortfeasors Act which provided for contribution in respect of a judgment obtained against two or more persons *jointly. . . .*
>
> Subsequently, the Legislature . . .

12

In *Salim v LaGuire,* 138 Mich App 334, 341; 361 NW2d 9 (1984), the Court of Appeals similarly observed, "(1) the former bar against contribution among nonjoint tortfeasors is abolished; (2) the right of contribution exists among nonintentional wrongdoers who share a common liability; and (3) *common liability exists among individuals who are responsible for an accident which produces a single indivisible injury."* (Emphasis added.)

Accordingly, a "common liability" exists in situations in which multiple tortfeasors are liable for the same injury to a person or property or for the same wrongful death. Common liability exists in such cases because multiple tortfeasors are alleged to be "responsible for an accident which produce[d] a single indivisible injury." *Id.* The 1995 tort reform legislation does not negate the

substituted the substance of the 1955 Uniform Contribution Among Tortfeasors Act for the 1941 act. Section 1 of the statute now provides:

"(1) Except as otherwise provided in this act, when 2 or more persons *become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death,* there is a right of contribution among them . . . ." [Emphasis in *O'Dowd.*]

. . . The revised act by explicitly providing for contribution among tortfeasors "severally" liable in tort extended contribution to [such tortfeasors]. [*O'Dowd, supra* at 603-604 (citations omitted; emphasis added unless otherwise noted).]

13

existence of common liability among such multiple tortfeasors. On the contrary, § 6304(1) provides that the allocation provisions of that section apply to tort actions "for personal injury, property damage, or wrongful death involving fault of more than 1 person," just as the contribution provisions of § 2925a(1) apply "when 2 or more persons become . . . severally liable in tort for the same injury to a person or property or for the same wrongful death . . . ." Section 6304 applies specifically in those cases in which there is common liability among multiple tortfeasors, and it is inaccurate to interpret it as meaning that there is no longer any common liability among responsible tortfeasors. Rather, the common liability remains; what differ merely are the terms and conditions by which that liability must be satisfied. That is, by virtue of § 6304, in cases in which there has been a judgment, a tortfeasor need only pay a percentage of the common liability that is proportionate to his fault. Previously, where there had been a judgment, a tortfeasor could have been required to pay the entire amount of common liability and then seek contribution from other tortfeasors according to their degrees of fault.

Second, the dissent relies on Restatement Torts, 3d: Apportionment of Liability, § 11, comment c, which states:

> When, under applicable law, a person is severally liable to an injured person for an indivisible injury, the injured person may recover only the severally liable person's comparative-responsibility share of the injured person's damages.

> \* \* \*
>
> *c. Contribution by severally liable defendant.* When all defendants are severally liable, each one is separately liable for that portion of the plaintiff's damages. Since overlapping liability cannot occur, severally liable defendants will not have any right to assert a contribution claim. See § 23, Comment *f*. [Emphasis in original.]

We note that the duty of this Court is to construe the language of Michigan's statutes before turning to secondary sources such as the Restatements. The specific statute at issue, § 2925a, allows for contribution after a settlement in cases in which liability is joint *or* several. Moreover, the above Restatement section refers, specifically, to those situations, already discussed above, in which an injured party has sued only one of multiple tortfeasors and the court, as it is obligated to do, has applied § 6304. The dissent is correct in observing that in such situations, the 1995 tort reform legislation, because it provides that liability is now several only, has "rendered unnecessary most claims for contribution in personal injury accidents." *Post* at 8. "[Because] overlapping liability cannot occur, severally liable defendants [need] not have

15

any right to assert a contribution claim." Restatement Torts, 3d, § 11, comment c.

However, more relevant to the specific issue raised in the instant case is the Restatement Torts, 3d: Apportionment of Liability, § 23, which provides in part:

> (a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another by settlement or discharge of judgment, the person discharging the liability is entitled to recover contribution from the other, unless the other previously had a valid settlement and release from the plaintiff.
>
> (b) A person entitled to recover contribution may recover no more than the amount paid to the plaintiff in excess of the person's comparative share of responsibility.

There is nothing in the language of § 23 or its comments to suggest that it does not apply in those cases in which the settling tortfeasor was only severally liable. The pertinent question is not whether liability is joint and several, or several only, but rather whether the settlement released the contributee. See note 10 later in this opinion.

Finally, the dissent asserts, despite the fact that § 2925a provides that it applies to cases in which liability is "joint[] *or* several[]," that contribution is barred in cases in which liability is several because a severally liable tortfeasor, pursuant to § 6304, is never *required* to pay more than his allocated share of fault. Thus, the

16

dissent surmises, "'plaintiff's decision to voluntarily pay pursuant to a settlement must be attributed to its own assessment of liability based on its insured's negligence.'" *Post* at 14 (citation omitted). The dissent's analysis is defective. That a tortfeasor is never *required,* "in an action" to which § 6304 applies, to pay more than its allocated share of fault is simply not relevant in determining whether the tortfeasor *may* exercise its statutory right to settle with the injured party and then exercise its statutory right to seek contribution from other tortfeasors on the basis of each tortfeasor's relative degree of fault.

This is illustrated by the fact that, even before the 1995 tort reform legislation, a tortfeasor whose liability was "joint and several" was never *required*, in a settlement, to pay more than what it deemed to be its fair share of the common liability burden. Yet, even though not *required,* the statute specifically gave (and continues to give) a tortfeasor who *chose* to settle for more than its fair share a right to seek contribution from other tortfeasors.[7] Indeed, the dissent would retain that right

---

[7] The important consideration in determining whether a settling tortfeasor may seek contribution from other tortfeasors has always been, and continues to be, not whether the tortfeasor settled for what it considered to be

17

for tortfeasors whose liability remained joint and several. Because *no* tortfeasor, including one whose liability is "joint and several," is or has ever been *required* to settle for more than his fair share of the common liability and yet § 2925a provides a right to contribution even after settling, it is evident that the dissent's analysis on this point is defective and cannot be sustained.[8]

Not only is the dissent's position ungrounded in the

its fair share of the common liability or, alternatively, for the entire amount of the common liability, but whether the settling party complied with the conditions set forth in § 2925a(3)(a)-(d), including releasing through the settlement the contributee from further liability to the injured party. Thus, even if a settling tortfeasor settles for only what it presumes to be its fair share of the common liability, if the settlement releases another tortfeasor, that settling tortfeasor, if it complies with the remainder of the statutory settlement conditions, may seek contribution from the released contributee.

For the same reason, we find no merit in the dissent's suggestion, *post* at 16, that the majority's decision will place parties in an "untenable position" during settlement negotiations, because they must "pretend . . . that each is potentially liable for the whole of a plaintiff's injuries." Because a settling party may still seek contribution under MCL 600.2925a for payments made in excess of its fair share of the common liability, there is no need to "pretend" to the contrary.

[8] The dissent has a point, as noted above, that the 1995 tort reform legislation renders unnecessary contribution actions that, in the absence of §§ 2956, 2957, and 6304, would have otherwise resulted after a "jointly and severally" liable tortfeasor has been required to pay an entire judgment to an injured party. Nonetheless, that these provisions also prohibit contribution actions resulting from a settlement is a concept, as also noted above, that has no apparent source in Michigan law.

18

relevant statutes, it raises an unnecessary disincentive to voluntary settlements, potentially harming both willing plaintiffs and willing defendants.[9] The dissent states that, "while settlements are generally favored, neither MCL 600.2925a nor MCL 600.6304 makes clear that the Legislature's goal was to promote voluntary settlement. Instead, their provisions place the risk of, and burden for, payment upon a party only to the extent that it is actually responsible for the injury." *Post* at 15. The dissent may be correct in these assertions, but they are irrelevant. Section 2925a may not "clearly" reflect a legislative intent of encouraging settlements, but neither does it reflect, clearly or otherwise, any intent to disfavor settlements, which is what the dissent's

---

[9] A tortfeasor might rationally conclude, after all, that it is in his interest to settle for an amount greater than his estimated pro rata liability as determined by a trier of fact. Taking a case to trial and leaving the allocation of responsibility to the trier of fact can involve a number of transactional costs. There are, for example, fees for attorneys, retained experts and other litigation costs, possible fiscal losses because of negative publicity, and opportunity costs incurred by those required to divert their time and energy from more productive matters to litigation.

A severally liable tortfeasor might prefer to settle for more than his pro rata share in order to avoid these costs. This incentive may be especially powerful when the tortfeasor believes that he may be found liable for non-economic damages that defy accurate estimation.

19

construction would produce.  Moreover, to construe § 2925a as affording a settling party a right to seek contribution from other responsible tortfeasors in cases in which liability is several only does not countermand the legislative intent of placing the "risk of, and burden for, payment upon a party only to the extent that it is actually responsible for the injury." *Post* at 15.  On the contrary, such a construction of § 2925a works affirmatively to effect that intent.[10]

---

[10] See *CSX Transportation, Inc v Union Tank Car Co,* 173 F Supp 2d 696, 699-700 (ED Mich, 2001), in which the United States District Court for the Eastern District of Michigan, in a contribution claim filed after a settlement by the settling party against other responsible tortfeasors, noted that while § 6304 renders contribution claims unnecessary, § 2925a still allows such claims after a settlement, thus furthering the legislative goals of encouraging settlements and properly allocating fault:

> Plaintiff CSXT is seeking an allocation of fault between the tortfeasors in this case. It is seeking neither "joint liability," nor "joint and several liability." Plaintiff CSXT is entitled, under Michigan law, to show that the Defendants and Plaintiff CSXT were/are severally liable (with an appropriate allocation of the percentages of fault) for the rail tank car accident in January of 2000.

> Because currently, in the usual case [i.e., the cases that proceed to trial], the allocation of fault is mandated, there will usually not be a circumstance where a tortfeasor has paid more than his pro-rata share of the common liability. Thus, there would be no need for a claim for contribution. This is what *Kokx v. Bylenga,* 241 Mich. App. 655, 617 N.W.2d 368 (2000) explained.

20

. . .

In the instant case, [because] Plaintiff CSXT . . . has settled numerous lawsuits, paying the full share of each, CSXT can assert that it has paid more than its pro-rata share of the liability. Thus, under Michigan law, it has a claim for contribution.

If the purposes behind the Michigan tort reform legislation were speedy settlement of suits, and allocation of fault, thwarting CSXT's ability to seek contribution defies both of those objectives. First, without the possibility of seeking "reimbursement" from other tortfeasors, CSXT would have no interest in seeking a speedy settlement of claims. Further, allowing CSXT to bring a claim for contribution furthers the purpose of holding tortfeasors responsible for their share of the liability.

A brief example explains a possible misunderstanding of the effect of the tort reform legislation. Assume two tortfeasors are equally responsible for an injury. Prior to the tort reform legislation, they could each be held liable for 100% of the injury. If one defendant paid the entire balance, he could sue the second defendant for contribution. However, after the tort reform legislation abolished joint and several liability (in nearly all cases, and the exceptions are irrelevant here), each could only be held for 50% of the injury. Therefore, there would be no need for an action for contribution.

This does not mean that a cause of action for contribution was completely extinguished by the legislation; it simply means that in the usual case [i.e., those that proceed to trial], it would not be needed. This is bolstered by the fact that the legislature did not repeal the contribution statute.

In the instant case, the claims have been settled without an allocation of fault. One tortfeasor has paid 100%, although there are likely other tortfeasors which can be allocated

21

## V. CONCLUSION

MCL 600.2925a-600.2925d provide plaintiff a statutory right to seek contribution from other responsible tortfeasors after having settled with the injured parties in the underlying tort action, and tort reform legislation in 1995 does not alter this right. Accordingly, we hold that plaintiff may proceed on its contribution action against defendants. We reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

> Stephen J. Markman
> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.

---

some of the fault. The statute permits a claim for contribution in this situation -- Plaintiff CSXT can allege that it has paid more than its pro-rata share of the liability. The tort reform legislation did not erase this right.

# STATE OF MICHIGAN

## SUPREME COURT

GERLING KONZERN ALLGEMEINE
VERSICHERUNGS AG, subrogee of
REGENTS OF THE UNIVERSITY OF
MICHIGAN,

    Plaintiff-Appellant,

v                                      No. 122938

CECIL R. LAWSON AND AMERICAN
BEAUTY TURF NURSERIES, INC.,
jointly and severally,

    Defendants-Appellees.

_____

WEAVER, J. *(concurring)*.

I concur in the majority's conclusion that plaintiff may proceed with its contribution action against defendant. As both the majority and the dissent note, tort reform has rendered many contribution actions unnecessary.[1] Nonetheless, the contribution statute, MCL 600.2925a, has not been repealed by the Legislature and remains in effect. Therefore, we must apply it to the present case.

Further, I agree with the majority's analysis of "common liability," as that which "exists in situations in which multiple tortfeasors are liable for the same injury

---

[1] *Ante* at 7; *post* at 8.

to a person or property or for the same wrongful death."
*Ante* at 13. Multiple tortfeasors are "'responsible for an accident which produce[d] a single indivisible injury.'" *Id.* (citation omitted). While a tortfeasor is now required to pay only a percentage of liability proportionate to the tortfeasor's degree of fault, there remains a single injury to the person or property for which multiple tortfeasors may be held liable, according to their degrees of fault. Thus, there is "common liability."

The dissent's analysis of "common liability" would, in essence, wipe out the contribution statute by equating "common liability" with "joint and several liability." *Post* at 8-12. While there may be good policy reasons to reconsider how the contribution statute should operate in light of recent tort reform, these questions are properly resolved by the Legislature, which may repeal or amend the statute as it sees fit.

In the present case, it is alleged that there are multiple tortfeasors responsible for "a single injury" to Ricki Ash and James Nicastri. Thus, there is "common liability" under the statute, and plaintiff may proceed

with its contribution action.[2]  For these reasons, I concur
in the result of the majority opinion.

                              Elizabeth A. Weaver

---

[2] Note that just because plaintiff may proceed with a
contribution action, this does not mean that plaintiff will
prevail.  Plaintiff must establish that defendant is at
fault in the accident, the degree of defendant's fault, and
that it paid more than its pro rata share of the entire
liability.

# STATE OF MICHIGAN

## SUPREME COURT

GERLING KONZERN ALLGEMEINE
VERSICHERUNGS AG, subrogee of
REGENTS OF THE UNIVERSITY OF
MICHIGAN,

    Plaintiff-Appellant,

v                            No. 122938

CECIL R. LAWSON and AMERICAN
BEAUTY TURF NURSERIES, INC.,
jointly and severally,

    Defendants-Appellees.

_____

KELLY, J. (*dissenting*).

Plaintiff seeks contribution from defendants for a portion of settlement monies paid to two third parties following a traffic accident involving three vehicles. We are asked to decide whether a contribution action is possible under the facts of this case and in light of tort reform legislation enacted in 1995.

The majority finds that such an action is viable, even considering that Michigan has adopted a comparative negligence scheme for personal injury actions. Under it, plaintiff would not have been liable for defendants' percentage of fault had this case proceeded to trial.

Because I believe that the majority misreads this tort reform legislation, I disagree with its conclusions.

According to MCL 600.2956, part of the 1995 tort reform legislation, tortfeasors' potential liability in a personal injury lawsuit is several and not joint. Applied to this case, it follows that plaintiff's insured was not liable for defendants' negligence. Hence, it could not have been held legally responsible to pay damages to third parties for injuries arising from defendants' negligence. When plaintiff settled with the third parties, the amount it agreed to pay could not be held to have included any of another party's percentage of fault for the accident.

Consequently, I would find that plaintiff cannot now seek contribution from the defendants for monies it paid in settlement of the third parties' claim. Thus, I would affirm the decision of the Court of Appeals that any amount that plaintiff paid in excess of its insured's percentage of fault should be deemed a voluntary payment.

FACTS AND LOWER COURT PROCEEDINGS

This case is a secondary proceeding that arose from a three-vehicle traffic accident on October 21, 1997. One vehicle was occupied by Ricki Ash and James Nicastri. Another was driven by Barry Maus, who was employed by the University of Michigan Board of Regents. Plaintiff is the

2

insurer of Maus and of the regents. The third vehicle was a semitrailer driven by defendant Cecil R. Lawson, who was employed by defendant American Beauty Turf Nurseries, Inc.

Ash and Nicastri sued Maus and the regents for damages for their injuries. In a separate proceeding, Lawson sued Maus and the regents for his injuries. Plaintiff settled both lawsuits against Maus and the regents, paying on their behalf approximately $2.2 million to Ash and Nicastri and $85,000 to Lawson.

In November 1999, plaintiff filed a separate complaint seeking statutory contribution under MCL 600.2925a from Lawson and American Beauty Turf for a portion of the amount it had paid to Ash and Nicastri. Defendants moved for summary disposition in their favor, alleging that plaintiff and the regents had not complied with the notice requirements of the contribution statute. See MCL 600.2925a(3) through (5). The trial court denied the motion and found that plaintiff had given defendants sufficient notice of its settlement negotiations with Ash and Nicastri. These claims are not at issue in this appeal.

After the trial court's motion cutoff date passed, defendants moved to dismiss pursuant to MCR 2.116(C)(8). They argued that the 1995 tort reform legislation,

3

specifically MCL 600.2956, 600.2957(1), and 600.6304(1), abrogated plaintiff's cause of action for contribution. Without addressing the substantive issue, the trial court denied the motion as untimely.

On appeal, the Court of Appeals reversed the decision and remanded for entry of judgment in defendants' favor. It held that, under the express language of the statutes at issue, contribution was not available to plaintiff. 254 Mich App 241, 248; 657 NW2d 143 (2002). We granted plaintiff's application for leave to appeal, 469 Mich 947 (2003), and subsequently ordered that the case be reargued and resubmitted. 471 Mich 855 (2004).

## STATUTORY LANGUAGE

This Court reviews de novo a decision on a motion for summary disposition. Questions regarding the interpretation and construction of statutes are questions of law that are also reviewed de novo. *Northville Charter Twp v Northville Pub Schools,* 469 Mich 285, 289; 666 NW2d 213 (2003). When construing a statute, our goal is to ascertain and give effect to the intent of the Legislature in writing it. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). The best measure of intent is the words that the Legislature used. *Chandler v Dowell Schlumberger Inc*, 456 Mich 395, 398; 572 NW2d 210 (1998).

4

As the Court of Appeals correctly noted, at issue here is the interplay between the provisions in the 1995 amendments of the Revised Judicature Act[1] and the preexisting contribution provisions contained in MCL 600.2925a, 600.2925b, and 600.2925c.

The pertinent subsections of MCL 600.2925a state:

> (1) Except as otherwise provided in this act, when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

> (2) The right of contribution exists only in favor of a tort-feasor *who has paid more that his pro rata share of the common liability* and his total recovery is limited to the amount paid by him in excess of his pro rata share. A tort-feasor against whom contribution is sought shall not be compelled to make contribution beyond his own pro rata share of the entire liability. [Emphasis added.]

One tortfeasor can seek contribution from another regardless of whether a judgment has been entered against either. MCL 600.2925c(1). However:

> If there is not a judgment for the injury or wrongful death against the tort-feasor seeking contribution, *his right to contribution is barred unless he has discharged by payment the common liability* within the statute of limitations period applicable to claimant's right of action against him and has commenced his action for contribution within 1 year after payment, or *unless he has agreed while action is pending*

---

[1] 1995 PA 161 and 1995 PA 249.

5

*against him to discharge the common liability* and has, within 1 year after the agreement, paid the liability and commenced his action for contribution. [MCL 600.2925c(4) (emphasis added).]

MCL 600.2925b addresses the expression "pro rata share" and includes considerations of fault and equity:

Except as otherwise provided by law, in determining the pro rata shares of tortfeasors in the entire liability as between themselves only and without affecting the rights of the injured party to a joint and several judgment:

(a) Their relative degrees of fault shall be considered.

(b) If equity requires, the collective liability of some as a group shall constitute a single share.

(c) Principles of equity applicable to contribution generally shall apply.

It is against this statutory backdrop that the Court is asked to address plaintiff's right to contribution under the 1995 tort reform legislation. MCL 600.2956 states:

Except as provided in [MCL 600.6304], in an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each defendant for damages is several only and is not joint. However, this section does not abolish an employer's vicarious liability for an act or omission of the employer's employee.

MCL 600.2957(1) similarly states:

In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to [MCL

6

600.6304], in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

In connection with the above, the relevant portion of MCL 600.6304 provides:

(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:

(a) The total amount of each plaintiff's damages.

(b) The percentage of the total fault of all persons that contributed to the death or injury, including each plaintiff and each person released from liability under section 2925d, regardless of whether the person was or could have been named as a party to the action.

* * *

(4) Liability in an action to which this section applies is several only and not joint. Except as otherwise provided in subsection (6), a person shall not be required to pay damages in an amount greater than his or her percentage of fault as found under subsection (1).

ANALYSIS

After reviewing the statutory provisions cited above, I agree with much of the rationale used by the Court of Appeals in this case and in its previous opinion in *Kokx v*

7

*Bylenga*, 241 Mich App 655; 617 NW2d 368 (2000).  The essence of these opinions is that the 1995 tort reform legislation has prevented and rendered unnecessary most claims for contribution in personal injury accidents.

Contribution remains a useful tool for fault and liability allocation in certain other circumstances.  The Court of Appeals in *Kokx* opined:

> [U]nder the plain and mandatory language of the revised statutes, a defendant cannot be held liable for damages beyond the defendant's pro-rata share, except in certain specified circumstances. Accordingly, in actions based on tort or another legal theory seeking damages for personal injury . . . there would be no basis for a claim of contribution. Moreover, because joint liability remains in certain circumstances, the Legislature would have no reason to repeal § 2925a, which provides for a right of contribution . . . . [*Id.* at 663.]

I agree with these observations. For example, MCL 600.2956 continues to recognize that common or joint liability exists in claims involving "an employer's vicarious liability . . . ."  And MCL 600.6304(6) specifically provides for joint liability in medical malpractice cases.

However, the statutory language at issue in this case supports defendants' position.  In order for one tortfeasor to recover contribution from others, he must pay the complainant more than his pro rata share of the *common*

8

*liability.* The amount that he may recover from the others is limited to the amount he paid to the complainant in excess of that for which he was liable. MCL 600.2925a(2). See also MCL 600.2925c(4). In this case, before any such calculation may be entertained, plaintiff must establish that under MCL 600.2957 or MCL 600.6304 there is common liability among the defendants.

This Court has previously discussed the interplay between contribution and "common liability" as follows:

> The general rule of contribution is that one who is compelled to pay or satisfy the whole or to bear more than his aliquot share of the *common burden or obligation*, upon which several persons are equally liable or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares. [*Caldwell v Fox*, 394 Mich 401, 417; 231 NW2d 46 (1975) (emphasis added).]

Thus, in order to enforce contribution under the revised act, it is necessary that the torfeasors "commonly share a burden of tort liability or, as it is sometimes put, there is a common burden of liability in tort." *O'Dowd v Gen Motors Corp*, 419 Mich 597, 604-605; 358 NW2d 553 (1984). See also *Caldwell, supra* at 420 n 5.

However, although these older cases are useful to a point, they do not take into account the sweeping changes the Legislature made in tort reform in 1995. Sections 2956, 2957, and 6304 replaced the notion of common

9

liability, which also has been referred to as joint and several liability, with "fair-share liability."  See *Smiley v Corrigan*, 248 Mich App 51, 53 n 6; 638 NW2d 151 (2001), citing House Legislative Analysis, HB 4508 (Substitute H-6), April 27, 1995, p 3.  Thus, because liability can no longer be joint but is now solely several under circumstances such as exist in this case, there is no basis for contribution.  There is no "common liability" from which to seek it.  See Restatement Torts, Apportionment of Liability, 3d, § B19, comment k, p 183.

The majority adopts plaintiff's argument that § 2925a(1), because it refers to persons who become "jointly *or severally* liable," may apply to cases in which tortfeasors are severally liable under MCL 600.2956. However, plaintiff fails to evaluate § 2925a(1) in conjunction with the limitation in § 2925a(2).  That subsection expressly restricts the right of contribution to circumstances where there has been a payment of greater than one's pro rata share of *"common liability."*  See also § 2925c(4).

Thus, it is not enough that tortfeasors are "jointly or severally liable."  Before contribution can be sought, they must share a "common liability."  This does not occur when the liability of tortfeasors is several.  As stated in

10

Restatement Torts, Apportionment of Liability, 3d, § 11, p 108:

> When, under applicable law, a person is severally liable to an injured person for an indivisible injury, the injured person may recover only the severally liable person's comparative-responsibility share of the injured person's damages.

I also find comment c of the same provision persuasive:

> *c. Contribution by severally liable defendant.* When all defendants are severally liable, each one is separately liable for that portion of the plaintiff's damages. Since overlapping liability cannot occur, severally liable defendants will not have any right to assert a contribution claim. [*Id.*, p 109.]

Therefore, the conclusion in *Salim v LaGuire,*[2] that common liability could exist among individuals responsible for an accident causing a single indivisible injury, may have been correct before the enactment of tort reform. However the injury involved in this case is no longer an "indivisible injury" under MCL 600.2925a. The Legislature has indicated its intention that these "indivisible injuries" now be divided.

In essence, what the majority appears to argue is that we should continue our notions of what, in the past, constituted an indivisible injury. In so doing, it ignores

---

[2] 138 Mich App 334, 340; 361 NW2d 9 (1984).

the intent of the Legislature in passing tort reform. The majority realizes that, had this case proceeded to trial, plaintiff could not have been held responsible for defendants' negligence. (*Ante* at 15-16.) Yet, because plaintiff chose to settle before trial, the majority maintains that the injury remains indivisible and thus plaintiff's contribution action is viable.

I conclude that the Legislature did not intend that a tortfeasor's legal liability for personal injury be governed by the gamesmanship and legal strategies of his fellow tortfeasors.[3] Implicit in the majority's opinion is the premise that an injury only becomes divisible when a jury divides it. I cannot accept this position. It would allow the parties to circumvent the tort reform statutes during settlement. Rather, the Legislature has based tortfeasors' potential liability on the cause of action involved, and what cause is involved is determined at the commencement of litigation.

The majority's analysis relies on case law decided before the existence of tort reform. It uses this law to frustrate the Legislature's recognition that injuries may

---

[3] I note that the majority omits the fact that plaintiff had already entered into a separate settlement agreement *with defendant* Lawson before it brought this contribution action.

now share a common origin or cause, yet result in no common liability or burden in tort.

Similarly, a plaintiff should not rely on the language of MCL 600.2925b merely because it sets out guidelines for determining the "pro rata shares" of common liability. The statute does not expose a plaintiff to greater liability than it would otherwise have under § 2956, § 2957, and § 6304. Where common liability exists, a review could be made of the measure of pro rata shares under MCL 600.2925b, possibly subjecting a tortfeasor to more liability than his actual percentage of fault. However, § 2925b does not apply where there is no common liability.

Thus, I think it clear that a pro rata division can be made only when tortfeasors actually share a common tort burden or liability. Because this case is a personal injury action, it is governed by MCL 600.2956 and, pursuant to that statute, there is no common liability. Hence, plaintiff's insured was responsible only for its own separate liability to Ash and Nicastri. This fact did not change simply because plaintiff chose to settle instead of proceeding to a jury determination of the actual percentages of fault of plaintiff's insured and defendants.

Even if plaintiff deliberately paid more than its pro rata share of the total liability, it cannot recover any of

that excess from defendants.  As the Court of Appeals aptly stated, "plaintiff's decision to voluntarily pay pursuant to a settlement must be attributed to its own assessment of liability based on its insured's negligence."  254 Mich App 247-248.  This view is certainly not unusual:

> In a several liability system, the nonsettling tortfeasor is held only for his comparative fault share.  In determining the percentage responsibility of the nonsettling tortfeasor, jurors must determine the comparative share of every tortfeasor, including those who have settled.  However, a determination that A's fault was 50% and B's fault was 50% does not affect A's settlement or his liability.  It merely means that B is liable for 50%, no more, no less.  If A paid more than 50% of the damages, that was his decision.  If he paid less, the plaintiff made a bad bargain, but none of this matters to B's liability.  [2 Dobbs, The Law of Torts, Practitioner Treatise Series (2001) § 390, p 1088.]

The majority opinion discusses at length how my reading of these statutes creates a disincentive to voluntary settlement (*Ante* at 19 to conclusion.)  However, it also acknowledges that "[a] primary purpose underlying 'contribution' was to mitigate the unfairness resulting to a jointly and severally liable tortfeasor who had been required to pay an entire judgment in cases in which other tortfeasors also contributed to an injury." (*Ante* at 5.)  Allowing a contribution action in this case does not serve

14

the Legislature's purpose in enacting tort reform, which changed the scheme to fair-share liability.

Moreover, while settlements are generally favored, neither MCL 600.2925a nor MCL 600.6304 makes clear that the Legislature's goal was to promote voluntary settlement.[4] Instead, their provisions are designed to allocate liability. They place the risk of, and burden for, payment upon a party only to the extent that it is actually responsible for an injury. This applies even if the injury traditionally would be viewed as indivisible.

The logic of the majority's position that its interpretation encourages settlement and mine hinders it is shaky. Once parties know the rules involving their negotiations, settlement will be facilitated. Clarifying the statute's meaning so that the parties know the extent of their liability aids negotiations. It does not preclude them.

In addition, I find questionable the assertion that allowing contribution actions under these circumstances will foster settlement goals. The majority fails to

---

[4] I recognize that the language of MCL 600.2925a(3) discusses what must be done during settlement negotiations to permit a subsequent contribution action. However, I read this language as barring tortfeasors who do not first seek the inclusion of other potentially liable parties in settlement negotiations, not as a policy statement preferring settlement.

15

recognize the untenable position in which parties will be placed during settlement negotiations as a result of its decision. The parties will be left to negotiate portions of claims for which they have no possible liability. The better position is to leave negotiations over those portions to the parties actually responsible.

The parties must recognize that, under tort reform, each tortfeasor cannot be held responsible for more than his fair share of the liability for a plaintiff's injury. But they must also pretend the contrary, that each is potentially liable for the whole of a plaintiff's injuries. Thus, in deciding whether to settle a claim, tortfeasors must calculate into their settlement decisions certain risks for liability that the Legislature has stated do not exist. The majority's conclusions inject unnecessary confusion into the settlement process involving personal injury actions.

### CONCLUSION

The language in MCL 600.2925a(2) and 600.2925c(4) allows recovery in a contribution action based on "common liability" only. MCL 600.2956 precludes common liability in a personal injury lawsuit. Because the lawsuit underlying this action was for personal injury, plaintiff's insured could not be held liable for contribution. It is

16

liable only for its "fair share" of the damages incurred by Ash and Nicastri based on its percentage of fault.

Accordingly, plaintiff cannot justifiably state that when it settled with Ash and Nicastri it was at risk of shouldering more than its fair share of a common burden. It cannot now recover contribution from defendants on the theory that it paid more than its pro rata share of such liability.

Therefore, I respectfully dissent from the majority's decision that contribution is possible here. I would instead affirm the decision of the Court of Appeals.

Marilyn Kelly
Michael F. Cavanagh